█ In the Matter of the Claim of JEANETTE A. KING, Appellant. PHILIP ROSS, as Industrial Commissioner, Respondent.—Decision affirmed, without costs. No opinion. Mahoney, P. J., Kane, Larkin and Mikoll, JJ., concur; Herlihy, J., dissents and votes to reverse in the following memorandum. Herlihy, J. (dissenting). The claimant was employed since 1973 by Internal Revenue Service (IRS) as a seasonal employee working from September to June of each year. The problem here seems to be centered around a survey made by IRS as to its seasonal employees. The claimant at the hearing testified as follows: "Q When you completed the survey, did your insert September on the survey? A Yes. Q Why did you select September? A Because the survey was taken in June and I was working and it was my understanding from the four years I was there that was when I want to be called back before January. Q Why did you not put October on that survey? A Because they would never call me back October. Q Do you know from your experience that I.R.S. would call you at any time? A Yes. Q Did you know that recall would be made irrespective of the date you put down on the survey? A Definitely. Q If you were recalled by I.R.S. prior to September, 1976, would you have gone back to work? A Yes, I would have. Q. Were you in fact ever recalled by I.R.S.? A Yes. Q Were you recalled on September 13, 1976? A Yes. Q Was that the approximately the same time you had been recalled in prior years? A Yes. Q So that in fact you were not recalled between June 29 and September 13? A No, I was never called. Q You were never told or advised by I.R.S. that there was a job available for your during that period? A I called repeatedly and they told me there was no work for me. Q When you were terminated by I.R.S., were you given a letter stating the reasons for your termination? A Yes, I have the green slip. I misplaced the letter from Mr. Rodgers. I have his old letters. Q You don't have his letter? A This is June, 1973, we were laid off. Q Is that substantially the same letter you received in June of 1976? A Exactly. Q Is the reason that is stated in this letter of June of '73 the same reason that was given to you in June, 1976? A Yes. Q What was that? A Seasonal reduction in work load. 'It is necessary we place you in nonwork status.' Q Were you also given a green slip, SP 1126? A Yes. Q Is there a reason stated on that form why you were terminated? A Lack of work. Will recall as needed." IRS stated in a memorandum sent to the board that during the period of June-September

the "claimant not contacted". It is conceded, and indeed it must be with the Federal employer, that she was involuntarily unemployed as of June 30, 1976 because of seasonal layoff. This record is devoid of any substantial evidence to sustain the board's finding "the overpayment is recoverable because claimant did not accept the benefits in good faith" and that "her certification constituted wilfull false statements to obtain benefits and subject her to the forfeit penalty imposed". The claimant explained her position as a seasonal worker and the statement to her former employer that she would be available in September simply accorded with the customs of the employment. From a reading of the present record and the companion appeals decided herewith it is evident that in these unusual circumstances, the practice was well established. From this record it must be concluded that an understanding had been established between the IRS and its seasonal employees and so far as the unemployment insurance board is concerned that there may have been an honest mistake or misunderstanding, but such does not constitute "willfulness" *(Matter of Vick [Catherwood],* 12 AD2d 120, 122). The board further found "that claimant made only token efforts to seek work and unreasonably restricted herself as to travel". The record shows without dispute that claimant was willing to work anywhere within Suffolk County and is replete with testimony as to her "job efforts". The fact is that her present permanent employment resulted from these "job efforts". There is no substantial evidence to sustain the unfounded conclusion of the board; to the contrary the record amply sustains the finding of the referee: "During the period in issue, she received a job offer at which she is currently working. Her job search was reasonable and diligent and established her presence in the labor market. Accordingly, claimant was available for employment during the period in issue." The decision should be reversed.